UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GILBERTO ALVAREZ<br>　　Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. |
| RYAN D. MCCARTHY, in his official<br>capacity as Secretary of the Department<br>of the Army,<br>　　Defendant. | §<br>§<br>§<br>§<br>§ | 6:16-CV-00172-ADA |

**PLAINTIFF'S OPPOSED MOTION FOR AN AWARD
OF REASONABLE FEES AND COSTS**

Plaintiff Gilberto Alvarez moves for an award of reasonable fees and costs pursuant to 42 U.S.C. § 2000e-5(k),[1] FED. R. CIV. P. 54(d)(2), LOCAL RULES CV-7(j) (as to fees) and CV-54 (as to costs), and the Court's orders (Doc. 114 at 7 and Doc. 116 at 2) as the prevailing party in this litigation. *Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992).

**A.　　The Lodestar Calculation of Alvarez's Fees**

The Supreme Court has established a "'strong presumption'" that the lodestar—the product of multiplying hours reasonably expended by a reasonable hourly rate—represents "the reasonable fee" to which a prevailing plaintiff is entitled. *Perdue v. Kenney A.*, 559 U.S. 542, 553-54 (2010). *See also Moreland v. A-Q-B, LLC*, 2019 WL 672870, at *4 (W.D. Tex. Dec. 11, 2019) (Albright, J.). This method yields an award that roughly approximates what the attorney would have received if representing a client who paid by the hour. *Perdue*, 559 U.S. at 551. The lodestar's components—hours and rates—are fact-findings that an appellate court would review

---

[1] Some cases cited in this motion may involve other statutes that allow a prevailing plaintiff to recover a reasonable fee from the defendant. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) ("[t]he standards set forth in this opinion [based on 42 U.S.C. § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'").

only for clear error. *Saizan v. Delta Concrete Prods.*, 448 F.3d 795, 800 (5th Cir. 2006).

In *Perdue*, the Supreme Court contrasted the lodestar method with the "method set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (C.A.5 1974), which listed 12 factors that a court should consider in determining a reasonable fee." 559 U.S. at 550-51. (The *Johnson* factors are listed *infra* pages 8-9.) Post-*Perdue*, the Fifth Circuit has treated the *Johnson* factors as a complement to the lodestar method. *See*, *e.g.*, *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) ("[t]hough the lodestar is presumed reasonable, … the court may enhance or decrease it based on the … *Johnson* factors"). Therefore, this motion will address both the lodestar method and the *Johnson* factors, in that order.

### 1.   **The Hours Reasonably Expended**

"The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433. *See also Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Consistently, LOCAL RULE CV-7(j) requires "an affidavit certifying (1) that the hours expended were actually expended on the topics stated." Alvarez's lawyers carry this initial burden with declarations concerning the *accuracy* of the billing records attached as Exhibit 2 to this motion. (C. Walsh Dec. (Exh. 1) at ¶ 28; R. McKnight Dec. (Exh. 4) at ¶ 13.)

For this motion, Mr. Walsh's firm's time records were checked against other "'contemporaneous records, briefs or memoranda to ensure against recording errors,'" and otherwise edited for clarity and completeness so as "to allow 'this Court to make an informed decision about the relevance and appropriateness of the entry.'" *Cobell v. Norton*, 407 F. Supp. 2d 140, 155 (D.D.C. 2005). (Exh. 1 (Walsh Dec.) at ¶ 17.) The Court's docket numbers were inserted into time entries to facilitate the association of tasks described in Exhibit 2 with objective work-product. The Wiley Walsh firm's records were then merged with Mr.

McKnight's entries (limited to assistance with this motion) and all were coded by stage of the litigation in order to create, in Exhibit 2, what LOCAL RULE CV-7(j) requires: "a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project."

But accuracy is not all: the time claimed in a billing record must be *reasonable* to be compensable. *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).[3] Hence, LOCAL RULE CV-7(j) requires that supporting testimony state not only that the records are accurate, but also that "the hours expended … were reasonable." In satisfaction of the requirement, the supporting declarations testify that the time claimed for compensation was reasonably necessary for representing Alvarez in this litigation (C. Walsh Dec. (Exh. 1) at ¶ 28; R. McKnight Dec. (Exh. 4) at ¶ 14). The following measures have helped to ensure a reasonable number of hours.

First, entries that reflect electronic filing or other administrative tasks have been reduced to eliminate time on such tasks. These discrete reductions are flagged on Exhibit 2 in blue ink. Second, Alvarez's lawyers have documented (and flagged on Exhibit 2 in green ink) discrete reductions in their exercise of billing judgment. These reductions, as described in Mr. Walsh's declaration, eliminated time for four minor timekeepers, eliminated time that two other timekeepers billed for gaining a basic familiarity with the case when their assistance was needed as the trial date approached, eliminated time for Mr. Castellanos to attend the pretrial conference, and reduced all travel time to one-half of actual time regardless of whether some of the travel

---

[3] Hours reasonably expended include time to prepare this motion and supporting material, *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985), and time for the pre-suit administrative process. 29 C.F.R. § 1614.501(e)(iv); *Carey v. N.Y. Gaslight Club, Inc.*, 447 U.S. 54, 61 n.2 (1980); *Sullivan v. Hudson*, 490 U.S. 877, 888–89, 892 (1989).

time was used for productive work on the case (and some of it was when Mr. Walsh and Mr. Castellanos traveled together to and from the focus group on Sept. 24, 2019, and the pretrial conference on Sept. 26, 2019). (Exh. 1 (Walsh Dec.) at ¶ 23.)

Third, Exhibit 2 eliminates all time for responding to the defendant's third motion to dismiss, and one-third of the time remaining after discrete reductions to the time for responding to the defendant's motion for summary judgment. (Exh. 1 (Walsh Dec.) at ¶ 20.) The eliminated time pertains to Alvarez's claim for discrimination, which was one of the possible two explanations (the other being retaliation) for the one adverse action at issue in this case. Alvarez dismissed the discrimination claim before trial (Doc. 73), so he did not prevail on it and cannot recover for time spent on it that was segregable from time spent on the retaliation claim.

But it would not be reasonable, when calculating the lodestar, to eliminate any other time for the retaliation claim. As *Hensley* makes clear,

> [m]any civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation …. [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435 (citation and footnote omitted). *This* case involved a common core (a single adverse action) with "related legal theories" (discrimination and retaliation) until Alvarez

dismissed the first. *Other than with respect to the third motion to dismiss and part of the motion for summary judgment*, "the litigation as a whole" occupied the time of Alvarez's counsel.

## 2. The Reasonable Hourly Rate

The second step is to determine a reasonable hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The case was tried in Waco, but the city limits of Waco do not necessarily define the "relevant community," as the Fifth Circuit recognized in *Lewallen v. City of Beaumont*, 394 F. App'x 38, 46 & n.26 (5th Cir. 2010) (finding no error "in the district's court's definition of the relevant legal community as the Eastern District of Texas, rather than just the City of Beaumont," where the case was tried, and noting cases in which "other courts have blessed judicial districts as the relevant market," citing *Jimenez v. Wood County, Texas*, 2009 WL 2744611, at *3 (E.D. Tex. Aug. 25, 2009); *McClain v. Lufkin Indus., Inc.*, 2009 WL 921436, at *6 (E.D. Tex. April 2, 2009), and *League*, 119 F.3d 1228, 1234 n.5 (5th Cir. 1997)). *See also Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (citation omitted), *cert. denied*, 513 U.S. 932 (1994):

> The relevant market for attorneys in a matter such as this [civil rights action] may extend beyond the local geographic community. "A national market or a market for a particular legal specialization may provide the appropriate market." To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel. Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees. This result would be in direct contravention of the purpose of … enforcement through the "private attorneys general" concept.

In this case, the relevant community for lawyers focusing on labor and employment law is not specific to Waco, but extends north to Dallas and south to Austin. According to Mr. Walsh, "[t]he Waco market is so near to Austin and Dallas that there is no difference between Waco rates and Austin/Dallas rates for high-quality representation on employment matters."

5

(Exh. 1 (Walsh Dec.) at ¶ 12.) Kerry O'Brien[1] and Robert W. Schmidt,[2] both of whom represents employment plaintiffs in Waco, corroborate this assessment. The local market's extent is due to there being no board-certified labor and employment lawyers in Waco or in surrounding counties who do only plaintiff-side work, and only one who does work on both sides of the docket. (Exh. 1 (Walsh Dec.) at ¶ 14.)

Alternatively, if the Court considers the relevant community to be Waco itself, Waco rates are not dispositive because an out-of-market lawyer can receive a home-market rate higher than the local rate. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 383 (5th Cir.) ("district court clearly erred in finding that local counsel were readily available to assist … and it legally erred in suggesting the local community rates are always required when out-of-town counsel are employed"; "in the unusual cases where out-of-district counsel are proven to be necessary to

---

[1] Exh. 6 (O'Brien Dec.) at ¶ 9:

> 9. I am not aware of any exclusively employee-rights lawyers in Waco and because of that, in my experience, lawyers who practice employment law in Waco are generally based in Austin, San Antonio, Dallas and Fort Worth. According to the Texas Board of Legal Specialization website, there are only two board certified employment attorneys in Waco, and according to their internet profiles, both partly or exclusively represent employers. Therefore, in my opinion, hourly rates charged by and awarded to plaintiffs employment attorneys in Austin, San Antonio, Dallas, and Fort Worth are reasonable rates in the Waco legal market for similar services, and it is reasonable for a Waco-based employee plaintiff to secure counsel from one of these cities.

[2] Exh. 5 (R. Schmidt Dec.) at ¶ 8:

> 8. … [M]y understanding is that the lawyers who focus their practices on employment law and who typically practice in Waco are based in Austin (as I am) or in San Antonio or the Dallas/Fort Worth area. It is my opinion that the market in Waco for employment lawyers is not meaningfully distinct from the nearby markets in Dallas/Fort Worth, Austin, and San Antonio. Lawyers from all four of those large cities work in Waco, so rates in Waco for representation in employment matters are effectively the rates in those cities.

6

secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation"), *cert. denied*, 565 U.S. 1036 (2011). Here, the lack of board-certified attorneys in Waco providing plaintiff-only representation, and Mr. Alvarez's testimony about why he sought representation in Austin,[3] support awarding compensation based on his attorney's rates in their home market of Austin.

Either way—because the local market is not limited to Waco and encompasses Austin and Dallas, or because Mr. Alvarez was warranted in going outside of the local market to find representation in Austin—the rates proper to this case align with those in Austin. With respect to Austin rates, Mr. Walsh has testified that what he requests in this motion (ranging from $350/hour to $585/hour, from March 2015 to now) are rates he has charged and received in Austin, and in the market extending from Dallas to Austin and encompassing Waco. (Exh. 1 (Walsh Dec.) at ¶ 12.[4]) Messrs. Schmidt and O'Brien validate these rates (Exh. 5 (Schmidt Dec.)

---

[3] Exh. 7 (Alvarez Dec.) at ¶ 7:

> 2. I work at Fort Hood and live in Killeen, Texas. When my wife and I researched attorneys for my claims, it was important to me that the firm have board certified labor and employment attorneys. In our research, we were unable to find any board-certified attorneys that did plaintiffs side employment law in Killeen, Texas and the surrounding areas. So, we were forced to go outside of where we lived. Because Austin is closer to Killeen than Waco, we began looking up plaintiff's side employment law firms in Austin, Texas. I personally contacted at least two other board-certified attorneys at employment law firms in Austin besides Wiley Walsh, P.C, which at that time was called Rob Wiley, P.C. Both of the other firms indicated that they would not take cases against the federal government. Rob Wiley P.C. was the only firm my wife and I contacted that set up an appointment for a consultation even after I told the firm it was a case against the Anny involving the EEO process….

[4] Mr. Walsh has chosen to use historical rates to avoid overcompensation for periods when he and his colleagues were billing at lower hourly rates. (Exh. 1 (Walsh Dec.) at ¶ 29.) In electing to use historical rates, he has also elected to forego interest to offset the delay in payment. (*Id.*)

at ¶¶ 10-11; Exh. 6 (O'Brien Dec.) at ¶¶ 11-12), as well as the rates for Ms. Wheeler ($585/hour), for associates Jairo Castellanos and Eric Dama ($395/hour), and for Robert McKnight ($400/hour) (Exh. 5 at ¶¶ 12-14; Exh. 6 at ¶¶ 13-14.) Mr. Walsh's testimony affirms, as required by LOCAL RULE CV-7(j), the reasonableness of the rates for himself and the timekeepers affiliated with his firm, including Kalandra Wheeler, and as does Mr. McKnight's for his own rate. (Exh. 1 (Walsh. Dec.) at ¶ 28); Exh. 4 (McKnight Dec.) at ¶ 15.)

These are the same rates the Hon. Royce Lamberth awarded the same timekeepers in *Johnson v. Southwest Res. Inst.*, 2019 WL 4003106, at *7 (W.D. Texas—San Antonio Div. Aug. 23, 2019) (Exh. 8) (except Mr. Dama, who did not appear in that case). To the extent they vary from the State Bar of Texas's statewide rate survey, the bar has stopped publishing it and the data in the last survey, dating back to 2015, are stale. (Exh. 1 (Walsh Dec.) at ¶ 12.)

  **3.** **The Lodestar Fee**

The reasonable hours and rates yield the following lodestar fee:

| Lawyer | Hours | Lodestar Fee |
|---|---|---|
| Colin W. Walsh | 295.30 | $166,130.50 |
| Kalandra N. Wheeler | 139.30 | $81,490.50 |
| Jairo N. Castellanos | 98.20 | $38,789.00 |
| Eric Dama | 16.30 | $6,438.50 |
| Robert E. McKnight, Jr. | 19.40 | $7,760.00 |
| **Totals** | **568.50** | **$300,608.50** |

  **B.** **The *Johnson* Factors**

The *Johnson* factors are:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the

8

    customary fee; (6) whether the fee is fixed or contingent;[5] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. But no factor that was considered in setting a lodestar component may be used later to adjust the lodestar. *Black v. SettlePou, PC*, 732 F.3d 492, 502 (5th Cir. 2013) ("[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar").

    All of the *Johnson* factors appear to be already accounted for in the lodestar. The only one that merits discussion is (8), given that "'the most critical factor in determining an attorney's fee award is the degree of success obtained.'" *Combs*, 829 F.3d at 394. First, all time distinctly attributable to the unsuccessful discrimination claim has already been factored into the lodestar—*by deleting it*—so the lodestar cannot be adjusted downward on this basis. The dismissal of the discrimination claim made no difference to the relief on the merits because there was only one adverse action. Second, Alvarez's requested fee exceeds his award of $144,731.91 (not including postjudgment interest), but only by a factor slightly more than two. The Fifth Circuit sometimes looks askance at fee awards that are *many multiples* of the judgment, but it "'ha[s] consistently emphasized that 'there is no *per se* requirement of proportionality in an award of attorney fees,'" *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018), and in that appeal it affirmed a fee award 11 times larger than the recovery. *Id.* Third, Alvarez did not unreasonably protract the litigation and increase the fees by rejecting a reasonable settlement

---

[5] But the sixth factor cannot be used to enhance a fee award. *See Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999) ("we vacate and remand the attorney's fee award so that the district court can reconsider what award should be made without taking into account whether the fee was fixed or contingent"; citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)). (Footnote not in original.)

9

offer. *Cf. Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1050 (5th Cir. 1998) (Barksdale, J., concurring in part and dissenting in part). Despite Alvarez's overtures, the defendant never engaged in a meaningful settlement discussion until the Court-ordered mediation after trial. (C. Walsh Dec. (Exh. 1) at ¶ 26.) The accuracy of the plaintiff's projection of his damages is reflected in the jury's award of exactly what he asked it to award (aside from a slight overcompensation of his back pay (Doc. 114 at 2 & n.4)).

### C. Alvarez's Costs

"Costs" include not just those available to a prevailing party under 28 U.S.C. § 1920, but all other costs an attorney would normally charge a fee-paying client in a Title VII case. *See, e.g.*, *Mota v. Univ. of Texas Houston Health Science*, 261 F.3d 512, 529 (5th Cir. 2001) (reasonable attorney's fee under 42 U.S.C. § 2000e-5(k) includes costs items *beyond those allowed under 28 U.S.C. § 1920*, including all reasonable costs charged a fee-paying client). The total costs incurred are listed in Exhibit 3, and the subset of costs that also are recoverable under 28 U.S.C. § 1920 are listed in Exhibit 3A. The Court should award all of them.

### D. Post-Judgment Interest on the Award of Fees and Costs

An award of fees and costs accrues interest from the date of the merits judgment establishing the right to the award. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir.), *cert. denied sub nom. L.K. Comstock & Co., Inc. v. La. Power & Light Co.*, 516 U.S. 862 (1995). Here, such interest should run from the order establishing Alvarez as the prevailing party (February 24, 2020) or, at latest, from the final judgment on March 9, 2020 (Doc. 116).

### E. Post-Motion Proceedings

Alvarez will supplement this motion as may be necessary for replying to the defendant's opposition, as well as by any post-judgment motion the defendant may file.

**Conclusion**

The Court should award the fees, costs, and postjudgment interest as set forth in the attached proposed order.

          Respectfully submitted,
          WILEY WALSH, P.C.

          By: */s/ Colin Walsh*
          Colin Walsh
          Texas Bar No. 24079538
          *Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*
          Jairo Castellanos
          Texas Bar No. 24089264

          WILEY WALSH, P.C.
          1011 San Jacinto Blvd., Ste. 401
          Austin, TX 78701
          Telephone: (512) 27-5527
          Facsimile: (512) 201-1263
          colin@wileywalsh.com

          Kalandra Wheeler
          Texas Bar No. 24051512
          *Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*

          WILEY WHEELER, P.C.
          1651 Richmond Ave.,
          Houston, TX 77006
          Telephone: (713) 337-1333
          Facsimile: (713) 337-1334
          kwheeler@robwiley.com

          Robert E. McKnight, Jr.
          Texas Bar No. 24051839
          Law Office of Robert E. McKnight, Jr.
          203 N. Liberty Street
          Victoria, TX    77901
          Telephone: (361) 573-5500
          Facsimile: (361) 573-5040
          mcknightr@lawmgk.com

          ATTORNEYS FOR PLAINTIFF

### Certificate of Conference

      I certify, under LOCAL RULE CV-7(j), that I attempted to resolve the parties' differences on the plaintiff's entitlement to an award of fees and costs. Specifically, I sent on Thursday, March 5, a near-final version of Exh. 2 (time entries) and Exh. 3 (costs) to defendant's counsel and scheduled a a conference call for Friday, March 6. Participating in the call were myself, Jairo Castellanos, and Robert McKnight for the plaintiff, and Liane Noble for the defendant. Because LOCAL RULE CV-7(j) requires me to certify here "the specific reason why the matter could not be resolved by agreement," I certify that the matters of disagreement we discussed in the conference call were: (1) the defendant's uncertainty (due to having relatively little time to research the matter after Exhs. 2 and 3 were provided on Thursday) that plaintiff can recover for time spent in the pre-judicial administrative process; (2) the defendant's position that the rates requested are not reasonable; and (3) the defendant's uncertainty that the motion adequately accounts for time spent on the claim that was dismissed. Plaintiff recognizes the defendant's exact objections may be different than plaintiff has phrased them here, but the rule requires specificity and plaintiff believes this is a fair statement of defendant's objections. Plaintiff also acknowledges defendant may have other objections after having more time to review the motion and supporting material.

                                                        /s/ Colin Walsh
                                                         Colin Walsh

### Certificate of Service

      I hereby certify that on March 9, 2020, I served a copy of the foregoing on counsel for Defendant via the Court's CM/ECF system.

                                                         /s/ Colin Walsh
                                                        Colin Walsh