IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **GILBERTO ALVAREZ,** *Plaintiff,* § § § § | | |
| v. | § § | **CIVIL NO. 6-16-CV-00172-ADA** |
| **RYAN D. MCCARTHY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF THE ARMY;** *Defendant.* | § § § § § § | |

## ORDER

Before the Court is Plaintiff Gilberto Alvarez's Motion for Attorneys' Fees and Costs (ECF No. 117). Defendant filed a timely Response to the Motion on March 27, 2020 (ECF No. 121), and Plaintiff filed a Reply (ECF No. 122). After reviewing the parties briefing, the applicable law, and the case file, the Court **GRANTS** Plaintiff's Motion but reduces the amount of fees that Plaintiff is seeking for the reasons set forth in the Order below.

### I.  BACKGROUND

This was not a complex or unusually contentious case. After a successful jury verdict, Plaintiff filed the present Motion on March 9, 2020, seeking what Plaintiff claims are reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k). The Defendants do not oppose the award of attorneys' fees, but they do oppose the amount of fees Plaintiff is seeking. The award of attorneys' fees sought by Plaintiff is approximately three times the amount of the jury's verdict and more than two times the amount of the Court's judgment. Defendant opposes the Motion and argues that Plaintiff's claimed hours, rates, and costs are excessive and should be reduced. Def.s' Resp., ECF No. 121 at 1.

1

## II. LEGAL STANDARD

The Supreme Court has established a "strong presumption" that the lodestar–the product of multiplying hours reasonably expended by a reasonable hourly rate–represents "the reasonable fee" to which a prevailing plaintiff is entitled. *Perdue v. Kenney A.*, 559 U.S. 542, 553–54 (2010). This method yields an award that roughly approximates what the attorney would have received if representing a client who paid by the hour. *Perdue*, 559 U.S. at 551. The lodestar's components are fact-findings that an appellate court would review only for clear error. *Saizan v. Delta Concrete Prods.*, 448 F.3d 795, 800 (5th Cir. 2006).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney's fee award, beginning with calculating the "lodestar." *Combs v. City of Huntington*, 829 F.3d 388, 391–92 (5th Cir. 2016) (*citing Jimenez v Wood Cty,* 621 F.3d 372, 379 (5th Cir. 2010)), on *reh'g en banc*, 660 F.3d 841 (5th Cir. 2011). The court must first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* In calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* at 379-80. Though the lodestar is presumed reasonable, *see Perdue,* 559 U.S at 553-54, the court may enhance or decrease it based on the twelve *Johnson* factors. *See Jimenez,* 621 F.3d at 380.[1] "The court must provide 'a reasonably specific explanation for all aspects of a fee determination.'" *Id.* (quoting *Perdue,* 559 U.S. at 558). The court must determine the number of

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19.

hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

As the party requesting fees, Plaintiff bears the burden of establishing the reasonableness of the fees and costs by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A court can also consider the various factors identified in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)—referred to as the "Johnson factors"—and may adjust the lodestar upward or downward depending on the weight it allots to those factors. *Black v. SettlePou, P.C*., 732 F.3d 492, 502 (5th Cir. 2013). As the fee applicant, Plaintiff "bear[s] the burden of showing that 'such an adjustment is necessary to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. & Urban Dev*., 99 F.3d 761, 771 (5th Cir. 1996).

### III. ANALYSIS

**A. This Was Not a Complex Case.**

This was not a complex case. Indeed, as the case proceeded from filing to trial the Plaintiff initially narrowed his complaint to a single claim of retaliation. Jury selection lasted half a day. Recognizing the simplicity of the issues involved, the Court allotted just two days for trial. *See* ECF No. 81 (limiting trial time to 5 hours per side). The case involved one plaintiff making claims that were very straight forward and well established in the law. Only seven fact witnesses were called at trial. Neither side called an expert witness. There were no novel or complex legal theories or issues. There were no substantial disputes concerning discovery. This Court is mindful that in *Cobb v. Miller,* the Fifth Circuit explained that "[i]n the absence of other *Johnson* factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of a low damages award," because "[s]uch an approach would lead to a

proportionality requirement between the amount of attorney's fees and the amount of damages." 818 F.2d 1227, 1235 (5th Cir. 1987). This Court rejects any analysis that is based only on proportionality.

The Court has considered the simplicity of the case and the issues involved in conducting its lodestar analysis. This *Johnson* factor ("novelty and difficulty of issues" in the case) has a bearing on the market rate and on whether the hours were reasonably spent and may be a basis for adjusting the lodestar. *Rodriguez v. City of Houston,* No. H–06–2650, 2009 WL 10679670 (S.D. Tex. Dec. 22, 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The case of *Schaeffer v. Warren Cty., Mississippi*, is analogous to the present case. No. 3:14-CV-945-DPJ-FKB, 2017 WL 5709640, at *1 (S.D. Miss. Nov. 27, 2017), *aff'd*, 744 F. App'x 871 (5th Cir. 2018). In *Schaffer*, the plaintiff alleged age-based discrimination, deprivation of overtime compensation under the Fair Labor Standards Act, and retaliation. *Id.* There, as here, only the retaliation claim survived, and only the retaliation claim was tried to verdict. *Id.* As in this case, the jury found for the plaintiff and awarded him approximately $100,000 in damages. In conducting the lodestar analysis, the *Schaeffer* court determined that the single-claim retaliation case was "simple", and the rates should accordingly be adjusted downward. *Id.* The *Schaeffer* court ultimately awarded plaintiff a total amount of $8,961.19 in attorneys' fees. In contrast, here, Plaintiff seeks 33 times that amount, or $300,608.50.

Other courts in the Fifth Circuit have similarly held that employment cases with just one or even two claims are "simple" and do not warrant attorneys' fees award anywhere in the ballpark of what Plaintiff now seeks. *See Faulk v. Duplantis*, No. CIV.A. 12-1714, 2015 WL 3539637, at *1 (E.D. La. June 4, 2015) (in a single-claim retaliation case that was tried to verdict **twice**, finding that the "case was not complex and awarding a total of $65,137.50 in fees);

4

*Halupka v. Federal Express Corp.*, No. 4:03-cv-350, 2006 WL 8441053, at *4 (E.D. Tex. Jun. 22, 2006) (downward adjustment of lodestar was appropriate in two-plaintiff racial discrimination and hostile work environment case because "Fifth Circuit law . . . regarding the claims brought by both Plaintiffs is rather well settled [and] [t]he Plaintiffs' claims were not necessarily novel or complex.").

Here, as in *Schaeffer, Faulk, and Halupka,* the Court should view the lodestar analysis through this lens. The hours expended and the hourly rates claimed by Plaintiff are disproportionate—not only to the verdict—but also to the needs of the case.

B. **The Hours Expended are Unreasonable and Excessive.**

The hours expended by Plaintiff's legal team were unreasonable and unnecessary. The Government challenges the following "buckets" of attorneys' fees. It argues that the Court should exclude (1) pre-trial, trial, and post-trial hours reflecting duplication of efforts by the five attorneys working on the case, (2) all hours related to the presentation of witnesses Gayle Johnson and Rex Thomas, and (3) hours related to an unnecessary focus group conducted by Plaintiff. The Court will address each of these individually.

    i.    **The Retention of Five Attorneys from Three Law Firms Resulted in Redundant and Unnecessary Hours.**

Given that this was a single-plaintiff, single-claim case, with few witnesses, no novel legal issues, which culminated in a 10-hour trial, it was unreasonable and inefficient for Plaintiff to retain five attorneys from three different law firms in three different cities. The Supreme Court has explained that "[c]ases may be overstaffed, and . . . [c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Here, Plaintiff over-staffed the case

and failed to make a good faith effort to exclude excessive, redundant, and otherwise unnecessary hours resulting from that overstaffing. In total, Plaintiff claims 568 hours in this case.

The Defendant submitted an Exhibit (Exhibit A) in which articulated the specific hours which Defendant asks the Court to exclude as duplicative, excessive, and unnecessary as a function of over-staffing. The Court will use this as a template to make clear which hours it intends to disallow.

**1. Pre-Trial Excess Hours**

Mr. Walsh handled the case solo from March 25, 2015 until October 17, 2017. Mr. Castellanos was added to the legal team and reviewed a response to a second motion to dismiss. Mr. Castellanos and Mr. Dama had limited interactions on the case until 2019. It appears from the billing records that they began their substantial billing related to the utilization of a focus group. Mr. Castellanos, Ms. Wheeler, and Mr. Walsh all charged fees for reviewing the case and for trial preparation. With respect to pre-trial preparation, Defendants have identified the following duplicative billing entries: 1) each time the legal team met, the individual attorneys each charged for the meeting; 2) Ms. Wheeler spent 3.6 hours preparing an opening statement for the focus group, while Mr. Walsh has <u>10</u> separate entries containing opening statement preparation; 3) Ms. Wheeler required 14.3 hours to review the pleadings and certain depositions to prepare for trial; and 4) almost every pre-trial document was reviewed and revised (sometimes multiple times) by three different attorneys, creating additional redundancies in a simple and straightforward case. The Court finds that while counsel for Plaintiff may have believed that this type of duplication (if that is the correct words since three attorneys were each repeating the same tasks) was necessary to prepare for trial, the Court does not believe that all of these fees are

reasonable or necessary. Therefore, the Court will award attorneys' fees for the work of any single attorney on any single task but not three times the fees.

   2. **Excess Hours at Trial**

At trial, Plaintiff was represented throughout the trial by three attorneys. The total cost for the mere presence of these attorneys at trial was $47,425.50. When more than one attorney is involved, "the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson*, 488 F.2d at 717. Specifically, the "time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 535 (5th Cir. 1986); *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982). The chance for inefficiency and duplication of effort is enhanced where, as here, the various attorneys are located in three different firms across three different cities.

The Court finds that the Government is reasonable in their objections with respect to this issue. The Court understands that in most if not all cases it takes at least two attorneys at trial. The case could have been tried by Mr. Walsh and Mr. Castellanos only. Mr. Walsh and Mr. Castellanos handled the bulk of the case presentation. The Court agrees that the additional attorneys' fees charged by Mr. Dama and Ms. Wheeler are not reasonable and cannot find that they were necessary. Although Ms. Wheeler did present two witnesses at trial (exhibiting both skill and preparation), the testimony of those two witnesses was irrelevant to the sole cause of action in this case (as described in greater detail in the section below). Even if they were not irrelevant, the case does not justify the retention of Ms. Wheeler when Mr. Walsh and Mr. Castellanos were perfectly capable of questioning those witnesses. Accordingly, the Court excludes the time that Ms. Wheeler expended in getting up to speed on the case once she joined the legal team through the time of trial.

7

Because the witnesses could have been handled at trial by other counsel more familiar with the case, the Court finds that the hours billed by Ms. Wheeler spent reviewing deposition transcripts of witnesses she did not take should be excluded. The Court also finds that her time spent reviewing the pleadings and the file may have been necessary for her to prepare for those witnesses but they were not reasonable and necessary in the sense of being recoverable given that other counsel on the trial team would not have had to expend those hours.

### 3. Post-Trial Excess Hours

The Government contends that there was duplication of effort by counsel for Plaintiff in the post-trial phase. For example, every single post-trial motion and response was reviewed and revised by three different attorneys, creating additional redundancies. The Court agrees that this is excessive and unnecessary.

The Government also challenges the involvement of Mr. McKnight in the preparation of the Motion for Attorneys' Fees. The Court agrees that the decision to have a fifth attorney is illogical here—not because it is a fifth attorney (although that too is questionable)—but because having an attorney who had no involvement in the litigation necessarily increased, rather than decreased, the efficiency of the preparation of the Motion. This decision made it unavoidable that Mr. McKnight would be required to get up to speed on case background and procedural history. Mr. Castellanos or Mr. Walsh could have prepared the fee motion and attached declarations. A paralegal obviously could have prepared the necessary documentation. The Government notes that the Motion for attorneys' fees filed in this case closely resembles that which was filed in a previous Motion for Attorney's Fees filed by Mr. Walsh and Mr. McKnight.

### ii. The Hours Expended on Witnesses Gayle Johnson and Rex Thomas Should be Excluded.

The Government contends that all hours related to the presentation of witnesses Gayle Johnson and Rex Thomas should be excluded. Ms. Johnson testified regarding the veteran's preference regulations, hiring procedures, and candidate-ranking system at Fort Hood. Mr. Thomas testified regarding the EEO complaint process at Fort Hood. The Government contends that their testimony was not probative of any relevant fact. The sole question on liability for the jury was:

> "Do you find that plaintiff Gilberto Alvarez would have been given a promotion to the position of supervisor of the Fort Hood brace shop but for filing a complaint with the Fort Hood EEO alleging national origin discrimination?"

*See* Jury Instructions and Verdict Form, Dkt. 91 at 7. The question for the Court is whether the testimony of Ms. Johnson or Mr. Thomas was relevant or necessary for the Plaintiff to persuade the jury how to resolve any factual dispute.

It is critical to note that the Government never disputed that Mr. Alvarez had previously filed an EEO complaint, that the EEO complaint was a protected activity, or that Mr. Alvarez did not receive the promotion to supervisor of the Brace Shop. Had the Government done so, obviously this would have made the testimony of these witnesses necessary. But the government did not. As a result, there was but a single issue for the jury to decide: **causation**. The testimony of Ms. Johnson and Mr. Thomas was unrelated to causation. While the Court is reluctant to question the decision made by trial counsel as to which witnesses to call, the Court finds that in this instance, Plaintiff's decision to call these witnesses was unnecessary, and hours associated with their presentation should be excluded from any fee award. Therefore, the hours related to Ms. Johnson and Mr. Thomas as excessive and unnecessary.

### iii. The Hours Expended and Costs Related to the Focus Group Should be Excluded.

The Court will exclude the roughly $35,893.60 in time and costs Plaintiffs expended on a focus group for this straightforward employment case. *See Rodriguez v. City of Houston,* No. H–06–2650, 2009 WL 10679670 (S.D. Tex. Dec. 22, 2009). *Rodriguez* was a more complicated civil rights case, but even there, the court found "while it is commendable that counsel made efforts to be well prepared for trial, the fees sought for the mock trial were not necessary and the fees demanded for the jury consultant are not reasonable given the large number of lawyers staffing this case." *Id.; see also Beach v. Wal-Mart Stores, Inc.*, 958 F. Supp. 2d 1165 (D. Nev. 2013) (fees associated with focus group in simple slip and fall action was not reasonable and necessary, and thus would not be included in attorney fee award); *Axel v. Griffin*, No. 12-1019 DSD/AJB, 2014 WL 896727, at *2 (D. Minn. Mar. 6, 2014) (in excessive force case against police department, finding "the hours associated with the . . . focus group . . . to be unnecessary."). In excluding the hours and costs associated with the focus group, the *Axel* court "note[d] its familiarity with the requirements of trial preparation and strategy for trial lawyers" and added that "[a]lthough [plaintiff's] attorneys may have *believed* that such a focus group was necessary for trial preparation, the court finds that such an expense was not necessary in this relatively simple case." *Id.* (emphasis added). Here, as in *Rodriguez, Beach,* and *Axel,* the hours and costs related to the focus group were unnecessary and should be excluded in their entirety, even if Plaintiff *believed* that the focus group was necessary.

### C. Plaintiff's Requested Hourly Rates are Unreasonable and Excessive.

The Government challenges the hourly rates charged by Plaintiff's counsel. An attorney's affidavit alone cannot support a rate's reasonableness. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("the burden is on the fee applicant to produce satisfactory evidence–in addition the

other attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Courts in the Fifth Circuit must employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940). Importantly, "[h]ourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.'" *See Hopwood v. Texas*, 236 F.3d 256,281 (5th Cir. 2000).

1. **As Other Courts Within this District Have Done, This Court Will Give Significant Weight to the State Bar of Texas Hourly Fact Sheet Publication.**

Defendant asks the Court to determine the appropriate range of fees based on the State Bar of Texas Hourly Fact Sheet publication, which provides "data collected on the hourly rates of 4,260 licensed and practicing, full-time private practitioners who provided hourly rate information for the calendar year 2015."[2]

Plaintiff argues that the State Bar's Fact Sheet is "stale" and should be disregarded by the Court. The Government cites directs the Court to a decision entered in January by a district court in the WDTX. In fact, as recently as January 2020, a court within the Western District of Texas relied upon the Fact Sheet to gauge the reasonableness of rates. *See Halprin v. Fed. Deposit Ins. Corp.*, No. 5:13-CV-1042-RP, 2020 WL 411045, at *7 (W.D. Tex. Jan. 24, 2020) (taking judicial notice of State Bar's 2015 hourly rate fact sheet and using it to calculate a reasonable hourly rate). *See also Joe Hand Promotions, Inc. v. Ramirez,* No. 7:18-CV-346, 2020 WL 43495, at *6 (S.D. Tex. Jan. 3, 2020) (in January 2020, comparing Plaintiff's claimed rate with State Bar's

---

[2]*See* https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID=34182, State Bar of Texas Dept. of Research and Analysis Hourly Fact Sheet.

2015 hourly rate fact sheet in determining whether attorney's rate was reasonable); *Furlow v. Bullzeye Oilfield Servs., LLC,* No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *3 (W.D. Tex. Jan. 3, 2019), *report and recommendation adopted*, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019) (in January 2019, using the 2015 hourly rate fact sheet as baseline for reasonableness and determining that Plaintiff failed to justify an "upward departure . . . [from] the State Bar of Texas Rate Survey median hourly rate"). Thus, the Court will use the State Bar Fact Sheet to gauge the reasonableness of Plaintiff's rates.

**2. The State Bar's Fact Sheet has been and remains a viable barometer of a rate's reasonableness.**

Here, Plaintiff's counsel seeks rates ranging from $350/hour to $585/hour. According to the State Bar's Fact Sheet, the median hourly rate for a labor and employment attorney is significantly less: **$280/hour** in the Dallas-Fort Worth-Arlington MSA and **$300/hour** in the Austin-Round Rock MSA (for this metric, there is no median rate listed for Waco, which is included in the Central Texas MSA). *See* Ex. B at 10 (Hourly Rates by Practice Area by Geographic Region). The unreasonableness of Plaintiff's claimed rates is also apparent when compared against the State Bar's data on median rates for attorneys by region and based on years of practice and firm size. *See* Ex. B at 12–13 (Hourly Rates by Years of Experience and Firm Size).

The State Bar Fact Sheet rates for the Waco and the Central Texas MSA are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Plaintiff's claimed rates of $350 to $585 per hour are not in line, and the Court will reduce the rates accordingly.

3. **The Court Will Decline Plaintiff's Invitation to Follow *Johnson v. Southwest Research Institute*.**

The Government contends that counsel for the Plaintiff seeks roughly double the rate identified by the State Bar of Texas Department of Research and Analysis for attorneys in this region with the same number of years of experience and within similar firms in terms of size. Plaintiff asks the Court to ignore the State Bar's Fact Sheet and all of the courts in this district which have used and continue to use the Fact Sheet as a measure of reasonableness. Instead, Plaintiff asks the Court to follow *Johnson v. Southwest Research Institute*. 2019 WL 4003106 (W.D. Tex. Aug. 23, 2019) *appeal dismissed sub nom.* No. 19-50845, 2020 WL 1188100 (5th Cir. Jan. 14, 2020). The Court finds that it is premature to assume that the determination made by the district court or the method the Court employed in determining the appropriate rates for counsel in *Johnson* is acceptable in the Fifth Circuit.

If anything, the cases relied in by the court in *Johnson* makes it more difficult for the Plaintiff to succeed in persuading this Court that their fees were reasonable given the type of case this was and the issues which were tried. *See MidCap Media Fin., LLC v. Pathway Data, Inc.*, No. 15-60, 2018 WL 7890668, at *2 (W.D. Tex. Dec. 19, 2018) (court awarded fees ranging from $325 to $755 per hour for attorneys at Haynes & Boone LLP, a firm with more than 575 lawyers, and case involved breach of contract); *Xpel Techs. Corp. v. Carlas Int'l Auto. Accessory, Ltd.*, No. 16-1308, 2017 WL 9362801, at *9 (W.D. Tex. Nov. 27, 2017) (court awarded a $545 hourly rate for attorneys at Dykema, a national law firm with 13 offices and over 400 lawyers, in a trademark infringement case, not an employment discrimination case); *City of San Antonio v. Hotels, com, L.P.*, No. 6-381, 2017 WL 1382553, at *11 (W.D. Tex. Apr. 17, 2017) (court awarded attorney's fees at rate of $350 to $475 hourly, but attorneys practiced at large law firms Bracewell LLP and McKool Smith LLP, in class action related to hotel

occupancy laws, which court deemed was a "specialized type of litigation"); *Sierra Club v. Energy Future Holdings Corp.*, No. 12-108, 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014) (court awarded an out-of-district counsel in a Clean Air Act case $925 per hour based on home market of Washington D.C.).

In sum, all of the hourly rates upon which the *Johnson* court relied were rates awarded to attorneys in national and international law firms with hundreds of attorneys. Of greater import to this Court is the fact that each of those cases required some form of specialization on the part of counsel. That is not to say that employment litigation cannot require a great deal of sophistication or specialization. The point is that *this litigation* was devoid of any necessity for Plaintiff's counsel to have any specialized training nor were there any issues involved that were complex.

The State Bar Fact Sheet demonstrates that the size of the law firm is a relevant consideration when it comes to rates. *See* Ex. B at 13 (Hourly Rates by Firm Size). There can be a several hundred dollar per hour difference between the rates charged by lawyers practicing in-attorney firms with only two attorneys and those charged by lawyers in 500-attorney firms. Moreover, the rates considered by the *Johnson* court were rates applicable to markets other than Waco and in cases involving more complex legal and factual issues than this case.

The Court must apply its "own knowledge and experience concerning reasonable and proper fees and must form an independent judgment." *Campbell*, 112 F.2d at 144. The State Bar Fact sheet remains the baseline for reasonableness in forming this judgment. Plaintiff has failed to justify an "upward departure . . . [from] the State Bar of Texas Rate Survey median hourly rate." *See Furlow*, 2019 WL 1313470, at *3. Accordingly, the Court will apply hourly rates similar to those included in the State Bar Fact Sheet for the Central Texas MSA.

Based on the forgoing analysis, the Court believes a reasonable hourly rate based on the practice area, firm size, geographic region, and case difficulty to be **$350.00 per hour**. Recently, the Court awarded a similar fee in breach of contract and franchise case that was more complex than the current case. *See Williams v. Aire Serv, LLC*, 6:18-CV-00304-ADA, ECF No. 78. Additionally, the attorney in *Williams* was a senior partner at a larger firm than Plaintiff's counsel and had more experience. Therefore, the Court finds that a reasonable hourly rate for this case is $350.00 per hour.

### D. Costs

The Court next addresses Defendants argument that the Court must make reductions of the following costs:

• **Attorney Travel and Subsistence**: The attorneys in this case request reimbursement for travel, hotel, and subsistence. There is no authority that allows for reimbursement of these costs. *See* 28 U.S.C. § 1920. Although 28 U.S.C. § 1821 provides for certain per diem and mileage expenses, these are specifically limited to witnesses. Nothing in these statutes provides for the payment of travel expenses to the attorneys in this case who are also claiming an hourly rate. The Court will not award these as costs.

• **Costs Associated with Duplication of Efforts**: Defendant also objects to the costs incurred as a function of Plaintiff's over-staffing. The Defendant argues that Westlaw research charges also likely include duplicative efforts because counsel's time entries reflect redundant research projects. The Court finds that this concern is unfounded and will award the Plaintiff all of claimed Westlaw charges.

• **Costs Related to the Focus Group**: Plaintiff seeks approximately $6,400 in costs associated with the focus group. As discussed above, the focus group was unnecessary and excessive

considering the level of complexity in this case. More importantly, even had the Court determined that the use of a focus group was necessary it would not find this to be a cost that should be reimbursed. Accordingly, Defendant the Court excludes all costs related to the focus group.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Attorneys' Fees and Costs is **GRANTED IN PART** as modified by this Order. Specifically, the Court awards the following:

1. $126,770.00 in attorneys' fees as described above; and
2. $4,223.65 in chargeable costs.

**SIGNED** this 6th day of April 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE